**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                          :
In re                                                     :          **Chapter 11**
                                                          :
**TOPS HOLDING II CORPORATION,** *et al.*,                :          **Case No. 18-22279 (RDD)**
                                                          :
          Debtors.[1]                                     :          **(Jointly Administered)**
                                                          :
-------------------------------------------------------------x

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER PURSUANT TO
SECTIONS 1129(a) AND (b) OF THE BANKRUPTCY CODE AND RULE 3020 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE CONFIRMING SECOND
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
TOPS HOLDING II CORPORATION AND ITS AFFILIATED DEBTORS**

WHEREAS Tops Holding II Corporation and its affiliated debtors (collectively,

the "**Debtors**"), as "**proponents of the plan**" within the meaning of section 1129 of title 11,

United States Code (the "**Bankruptcy Code**"), filed the *Second Amended Joint Chapter 11 Plan*

*of Reorganization of Tops Holding II Corporation and Its Affiliated Debtors* (ECF No. 658)

(such plan, as transmitted to parties in interest, the "**Second Amended Plan**," and as

subsequently modified as reflected in the *Second Amended Joint Chapter 11 Plan of*

*Reorganization of Tops Holding II Corporation and its Affiliated Debtors (with Technical*

*Modifications)* (ECF No. 751), the "**Plan**"),[2] and the *Disclosure Statement for Second Amended*

*Joint Chapter 11 Plan of Reorganization of Tops Holding II Corporation and Its Affiliated*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Tops Holding II Corporation (3709), Tops MBO Corporation (4249), Tops Holding LLC (2536), Tops Markets, LLC (2810), Tops Markets II Corporation (6401), Tops PT, LLC (2050), Tops Gift Card Company, LLC (6105), Erie Logistics LLC (9381), and TM1, LLC (2409).  The Debtors' mailing address is: 124 Taylor Road, Depew, New York 14043.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as **Exhibit "A**."  Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  The technical amendments reflected in ECF No. 751 are referred to below as the "**Technical Modifications**".

*Debtors*, dated September 28, 2018 (ECF No. 659) (as transmitted to parties in interest, the "**Disclosure Statement**"); and

WHEREAS on September 28, 2018, the Court entered an order (the "**Solicitation Order**") (ECF No. 660), which, among other things, (i) approved the Disclosure Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) established November 8, 2018, as the date for the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**"), (iii) approved the form and method of notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**"), and (iv) established certain procedures for soliciting and tabulating votes with respect to the Second Amended Plan; and

WHEREAS the Confirmation Hearing Notice and (i) as to holders of Claims in Class 3 (Senior Secured Notes Claims) and Class 4 (General Unsecured Claims) entitled to vote, the Disclosure Statement (with the Second Amended Plan annexed thereto), the Solicitation Order (without exhibits), and an appropriate form of ballot and return envelope (such ballot and return envelope being referred to as a "**Ballot**"), (ii) as to holders of Claims or Interests, as applicable, in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (Intercompany Claims), and Class 8 (Intercompany Interests), a Notice of Non-Voting Status – Unimpaired Classes (as defined in the Solicitation Order), and (iii) as to holders of Claims or Interests, as applicable, in Class 6 (Existing Holdings II Interests), Class 7 (Existing MBO Interests), and Class 9 (Subordinated Securities Claims), a Notice of Non-Voting Status – Impaired Classes (as defined in the Solicitation Order), were transmitted as set forth in the *Affidavit of Service of Solicitation Materials of Jane Sullivan*, sworn to on October 9, 2018 (ECF No. 684) (the "**Epiq Affidavit**"), evidencing the timely service of the Disclosure Statement (with the Second Amended Plan annexed thereto), related solicitation materials, and Notices of Non-

Voting Status, and such service is in accordance with the Solicitation Order and adequate as provided by Bankruptcy Rule 3017(d); and

WHEREAS the *Affidavit of Publication* of Tim Conklin, sworn to on October 18, 2018 (the "**Affidavit of Publication**") (ECF No. 711) was filed evidencing publication of the Confirmation Hearing Notice on October 5, 2018 once in the national edition of the *New York Times* and once in the *Buffalo News*, in accordance with the Solicitation Order; and

WHEREAS, in accordance with Section 5.4(a) of the Plan, and as reflected in the *Notice of Election of LLC Transfer Pursuant to Section 5.4(a) of the Second Amended Joint Chapter 11 Plan of Reorganization of Tops Holding II Corporation and its Affiliated Debtors* (ECF No. 699), the Debtors have elected to consummate the LLC Transfer; and

WHEREAS, on October 22, 2018, the Debtors filed the *Notice Regarding Assumption of (I) Executory Contracts, (II) Proposed Cure Amounts, and (III) Related Procedures* (ECF No. 702) (the "**Assumption Notice**") setting forth certain executory contracts to be assumed pursuant to the Plan; and

WHEREAS, on October 25, 2018, the Debtors filed the *Supplemental Notice Regarding (I) Assumption of Additional Executory Contracts, (II) Deletion of Certain Executory Contracts Previously Noticed for Assumption, and (III) Related Procedures* (ECF No. 719) (the "**Supplemental Assumption Notice**") setting forth certain additional executory contracts to be assumed pursuant to the Plan and deleting certain contracts from the Assumption Notice; and

WHEREAS on October 25, 2018, the Debtors filed the Plan Supplement with respect to the Plan (ECF No. 721) (as the documents contained therein may have been or may be further amended or supplemented, the "**Plan Supplement**"); and

WHEREAS the following objections to confirmation of the Plan were filed:

- *Objection of the United States Trustee to Confirmation of the Joint Chapter 11 Plan of Tops Holding II Corporation and its Affiliated Debtors* (ECF No. 731) (the "**US Trustee Objection**");

- *Objection and Reservation of Rights of the Trustee for the 8.750% / 9.500% and Senior Notes Due 2018 and the 9.000% Senior Amortizing Notes Due 2020* (ECF No. 722);  (the "**Indenture Trustee Objection**");

- *Limited Objection to Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of Tops Holding II Corporation and its Affiliated Debtors* filed by Southpaw Asset Management LP (ECF No. 730) (the "**Southpaw Objection**");

- *Objection of Rochester Regional Health and United Memorial Medical Center to Debtors' Proposed Cure Cost and Assumption of Executory Contract* (ECF No. 725) (the "**Rochester Objection**"); and

- *Oracle's Limited Objection and Rights Reservation Regarding Notice Regarding Assumption of (I) Executory Contracts, (II) Proposed Cure Amounts, and (III) Related Procedures* (ECF No. 726) (the "**Oracle Objection**").

WHEREAS on November 1, 2018, the Southpaw Objection was withdrawn (ECF No. 742), and the Rochester Objection, the Oracle Objection, and the Indenture Trustee Objection have been resolved and the US Trustee Objection has been partially resolved, as stated on the record of the Confirmation Hearing; and

WHEREAS on November 6, 2018, the Debtors filed (i) a memorandum of law in support of confirmation and an omnibus response to the US Trustee Objection and the Indenture Trustee Objection (the "**Confirmation Brief and Response**") (ECF No. 753), (ii) the *Declaration of Michael Buenzow in Support of Confirmation of Debtors' Second Amended Joint Chapter 11 Plan* (ECF No. 754) (the "**Buenzow Declaration**"); and (iii) the *Declaration of Elliott Ross in Support of Confirmation of Second Amended Joint Chapter 11 Plan of Reorganization of Tops Holding II Corporation and its Affiliated Debtors* (with Technical Modifications) (ECF No. 755) (the "**Ross Declaration**"); and

4

WHEREAS the *Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the Second Amended Joint Chapter 11 Plan of Reorganization of Tops Holding II Corporation and Its Affiliated Debtors*, sworn to on  November 5, 2018 (ECF No. 747) (the "**Voting Report**") was filed, attesting and certifying the method and results of the tabulation of votes with respect to those Classes entitled to vote to accept or reject the Plan; and

WHEREAS the Confirmation Hearing was held and concluded on November 8, 2018, and the record was closed; and

WHEREAS on November 8, 2018, the Court rendered a Bench Decision regarding confirmation of the Plan (the "**Decision**"); and

NOW, THEREFORE, based on the Voting Report, the Buenzow Declaration, the Debtors' Confirmation Brief and Response, the Affidavit of Publication, and the Epiq Affidavit; and upon (i) the record of and representations made at the Confirmation Hearing, including all the evidence proffered or adduced at, the Objections filed in connection with, and the arguments of counsel made at the Confirmation Hearing, and (ii) the entire record of the Chapter 11 Cases, including the Decision; and after due deliberation thereon and sufficient cause appearing therefor, including for the reasons stated by the Court in the Decision:

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth herein and in the Decision constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.  To the extent any of the following findings of fact constitute conclusions of law,

WEIL:\96792719\1\77738.0004

they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

          B.        <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) that the Court has the power to decide by a final order under the United States Constitution, and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

          C.        <u>Judicial Notice</u>.   The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and the evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, including, but not limited to, the hearing to consider the adequacy of the Disclosure Statement and the Solicitation Order entered in connection therewith.

          D.        <u>Burden of Proof</u>.  The Debtors have the burden of proving satisfaction of the applicable elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence and have satisfied such burden as reflected herein.

          E.        <u>Transmittal and Mailing of Materials; Notice</u>.  The Disclosure Statement, the Second Amended Plan, the Ballots, the Solicitation Order, and the Confirmation Hearing Notice, which were transmitted and served as set forth in the Epiq Affidavit, have been transmitted, served, and published in compliance with the Solicitation Order, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

Rules"). Such transmittal, service, and publication were adequate and sufficient, and no other or further notice is or shall be required.

       F.    <u>Voting</u>.  Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and industry practice.

       G.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

       H.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to Administrative Expenses and Priority Tax Claims, which need not be designated, the Plan designates nine Classes of Claims and Interests.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims or Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.  The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

       I.    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article III of the Plan specifies that Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (Intercompany Claims), and Class 8 (Intercompany Interests) are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

       J.    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Article III of the Plan designates Class 3 (Senior Secured Notes Claims), Class 4 (General Unsecured Claims), Class 6 (Existing Holdings II Interests), Class 7 (Existing MBO Interests), and Class 9

(Subordinated Securities Claims) as Impaired, and Article IV of the Plan specifies the treatment of Claims and Interests in such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

K.    No Discrimination (11 U.S.C. § 1123(a)(4)).    The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

L.    Implementation of Plan (11 U.S.C. § 1123(a)(5)).    The Plan and the various documents and agreements set forth in the Plan Supplement, the Definitive Documents, and the Exhibits to the Plan provide adequate and proper means for the Plan's implementation, including (i) the LLC Transfer in accordance with the LLC Transfer Transaction Documents, and (ii) the Global Settlement, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

M.    Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).    The certificate of incorporation, articles of incorporation, bylaws, limited liability company agreement or similar governing document, as applicable, of each Debtor has been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities in accordance with section 1123(a)(6) of the Bankruptcy Code.

N.    Selection of Officers, Directors, or Trustees (11 U.S.C. § 1123(a)(7)).    To the extent known and determined, the identity and affiliation of the persons who will serve as members of the New Board have been disclosed, with the identities of the remaining members of the boards of directors or managers of the Reorganized Debtors to be disclosed, together with their affiliations, on or before the Effective Date as provided Section 5.13 of the Plan, which sets forth who shall serve as officers of the Reorganized Debtors (as may be modified pursuant to the

Plan Supplement); and the appointment to, or continuance in, such positions of such persons is consistent with the interests of Holders of Claims against and Interests in the Debtors and public policy. In addition, the Plan Supplement identifies the GUC Litigation Trustee. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

O.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The provisions of the Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

P.    <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the entities submitting the Plan as proponents, thereby satisfying Bankruptcy Rule 3016(a).

Q.    <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(i)    The Debtors are proper debtors under section 109 of the Bankruptcy Code.

(ii)    The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.

(iii)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Disclosure Statement, the Second Amended Plan, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Second Amended Plan.

R.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases. The

WEIL:\96792719\1\77738.0004

Plan is the product of extensive arms'-length negotiations between and among the Debtors, the Ad Hoc Committee, and the Creditors' Committee. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and effectuating a successful reorganization of the Debtors.

S.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

T.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. To the extent known and determined, the identity and affiliation of the persons who will serve as members of the New Board have been disclosed, with the identities of the remaining members of the boards of directors or managers of the Reorganized Debtors to be disclosed, together with their affiliations, on or before the Effective Date pursuant to Section 5.13 of the Plan, which sets forth who shall serve as officers of the Reorganized Debtors (as may be modified pursuant to the Plan Supplement); and the appointment to, or continuance in, such positions of such persons is consistent with the interests of Holders of Claims against and Interests in the Debtors and public policy. In addition, the Plan Supplement identifies the GUC Litigation Trustee. Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

U.      No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for any changes in any regulated rates, and therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

V.     <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code.  The Disclosure Statement, including the Liquidation

Analysis annexed thereto as Exhibit B, the Plan Supplement, the Buenzow Declaration, and the

other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible,

(ii) have not been controverted by other evidence, and (iii) establish that each holder of an

impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan,

on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less

than the amount such holder would receive or retain if the Debtors were liquidated under chapter

7 of the Bankruptcy Code on such date.

W.     <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Class 1 (Priority

Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (Intercompany Claims), and Class 8

(Intercompany Interests) are Unimpaired under the Plan and are presumed to have accepted the

Plan pursuant to section 1126(f) of the Bankruptcy Code.   As reflected in the Voting Report,

Class 3 (Senior Secured Notes Claims) and Class 4 (General Unsecured Claims) have voted to

accept the Plan in accordance with section 1126 of the Bankruptcy Code.  Class 6 (Existing

Holdings II Interests), Class 7 (Existing MBO Interests), and Class 9 (Subordinated Securities

Claims) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy

Code.   Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect

to Class 6 (Existing Holdings II Interests), Class 7 (Existing MBO Interests), and Class 9

(Subordinated Securities Claims), the Plan is confirmable because the Plan satisfies section

1129(b) of the Bankruptcy Code with respect to each of Class 6, Class 7, and Class 9.

X.     <u>Treatment of Administrative Expense Claims, Priority Non-Tax Claims,
and  Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Expense

Claims and Priority Non-Tax Claims pursuant to Sections 2.1 and 4.1 of the Plan, respectively, satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

Y.      Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).    Class 3 (Senior Secured Notes Claims) and Class 4 (General Unsecured Claims) are Impaired under the Plan and have accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

Z.      Feasibility (11 U.S.C. § 1129(a)(11)).    The evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan, subject to the occurrence of the Effective Date, is feasible and that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

AA.      Payment of Fees (11 U.S.C. § 1129(a)(12)).    All fees payable under section 1930 of title 28, United States Code, as determined by the Court, have been paid or will be paid pursuant to Section 12.1 of the Plan.   Pursuant to Section 12.1 of the Plan, on the Effective Date, and thereafter as may be required, such fees, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code, shall be paid by each of the Debtors.   Thus, Section 12.1 of the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

WEIL:\96792719\1\77738.0004

BB.    <u>Benefit Plans (11 U.S.C. § 1129(a)(13))</u>.    The Plan complies with section 1129(a)(13) of the Bankruptcy Code by reason of the provisions of Sections 5.15 and 8.5 of the Plan.

CC.    <u>Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.    The Debtors are not required by a judicial or administrative order, or by statute, to pay any domestic support obligations, and therefore, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

DD.    <u>The Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.    The Debtors are not individuals, and therefore, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

EE.    <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.    Each of the Debtors is a moneyed, business, or commercial corporation or trust, and therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

FF.    <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)</u>. Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Class 6 (Existing Holdings II Interests), Class 7 (Existing MBO Interests), and Class 9 (Subordinated Securities Claims), the Plan is confirmable because the Plan satisfies section 1129(b) with respect to each such Class.    Based on the Disclosure Statement, the Confirmation Brief and Response, the Buenzow Declaration, and the Ross Declaration and the evidence proffered, adduced, or presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to Claims in Class 9 (Subordinated Securities Claims) and Interests in Class 6 (Existing Holdings II Interests) and Class 7 (Existing MBO

Interests), as required by section 1129(b) of the Bankruptcy Code.  More specifically, the holders of Interests in Class 6 (Existing Holdings II Interests) and Class 7 (Existing MBO Interests), which are being treated similarly under the Plan, are legally distinct in nature from all other Classes — no other Class has similar legal characteristics.  Due to the unique characteristics of these Interest holders, the Plan does not discriminate unfairly with respect to classifying or treating such Interests.  With respect to the Subordinate Securities Claims in Class 9, no similar class of Claims exists.  These Claims are not receiving any distribution under the Plan.  The fact that these Claims are subordinated makes these claims (to the extent any such claims exist) unique in these cases and, therefore, allows them to receive different treatment than other unsecured Claims.  Accordingly, the Plan does not discriminate unfairly with respect to these Classes 6, 7, and 9.  Further, the "fair and equitable" rule is satisfied as to the holders of Claims in Class 9 and Interests in Class 6 and Class 7, as no Claims or Interests junior to each such class, as applicable, will receive or retain any property under the Plan on account of such Claims or Interests.  Moreover, no senior creditor will receive in excess of the full value of its Claim under the Plan.  Accordingly, upon confirmation of the Plan and the occurrence of the Effective Date, the Plan (subject to any modifications set forth herein) shall be binding on the members of Class 6 (Existing Holdings II Interests), Class 7 (Existing MBO Interests), and Class 9 (Subordinated Securities Claims).

GG.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan filed in these Chapter 11 Cases, and therefore, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

WEIL:\96792719\1\77738.0004

HH.   <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.   The principal

purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5

of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

II.   <u>Modifications to the Plan</u>.   The Technical Modifications constitute

technical changes to the Plan and do not materially adversely affect or change the treatment of

any Claims or Interests.   Accordingly, pursuant to Bankruptcy Rule 3019, the Technical

Amendments do not require additional disclosure under section 1125 of the Bankruptcy Code or

re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that

holders of Claims or Interests be afforded an opportunity to change previously cast acceptances

or rejections of the Plan, thereby satisfying section 1127 of the Bankruptcy Code.

JJ.   <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.   Based on the record before

the Court in these Chapter 11 Cases, the Debtors and their directors, officers, employees,

members, agents, advisors, and professionals have acted in "good faith" within the meaning of

section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the

Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating

to the solicitation of acceptances or rejections of the Plan and their participation in the activities

described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by

section 1125(e) of the Bankruptcy Code.   Such solicitation, including with respect to the third-

party injunction, third-party release and exculpation provisions of the Plan, also satisfied the

requirements of due process.

KK.   <u>Satisfaction of Confirmation Requirements</u>.   The Plan satisfies the

requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

LL.    <u>Implementation</u>.    All documents necessary to implement the Plan, including the Exhibits to the Plan, those documents contained in the Plan Supplement, the Definitive Documents, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law. Such documents provide adequate and proper means for the Plan's implementation.

MM.    <u>Injunction, Exculpation, and Releases</u>.

(a)    The Bankruptcy Court has core jurisdiction under sections 157(a)-(b) and 1334(a) and (b) of title 28 of the United States Code and authority under sections 105 1141 and of the Bankruptcy Code to approve the injunctions or stays, injunction against interference with the Plan, releases, and exculpation set forth in in the Plan, including in Sections 10.5, 10.6 and 10.7 of the Plan, respectively.  With respect to the releases set forth in section 10.6(b) of the Plan (the "**Third-Party Releases**"), as has been established based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, the Court has subject matter jurisdiction to approve the Third-Party Releases because the claims that are the subject of the Third-Party Releases could have a conceivable effect on the Debtors' Estates; and, further, for the reasons stated in the Decision, the Court has the power to render a final decision confirming the Plan, including such provisions, under the United States Constitution.  The Third-Party Releases facilitated participation in the negotiation of a Plan that maximized value for the Debtors' economic stakeholders, and parties in interest who would be bound by such releases had due and sufficient notice that they would be bound by such releases unless they elected to opt out of them, and such notice and right to opt out satisfy the requirements of due process and section 1141(a) of the Bankruptcy Code.  As such, the Third Party Releases offer appropriate

WEIL:\96792719\1\77738.0004

protections to parties who constructively participated in the Debtors' restructuring process by, among other things, supporting the Plan.

(b)       The releases granted by the Debtor and their Estates pursuant to Section 10.6(a) of the Plan (the "**Debtors' Release**") represent a valid exercise of the Debtors' business judgment, and are fair, reasonable and in the best interests of the Debtors' Estates taking into account the legal risk, cost and delay of litigation.  The Debtors' Release is an integral part of the Global Settlement that is the foundation for the consensual Plan that was achieved.

(c)       The scope of the Third-Party Releases is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and parties in interest received due and adequate notice of the Third-Party Releases and the mechanism for opting out of the Third-Party Releases.  Among other things, the Plan, the Disclosure Statement, and the Ballots provide appropriate and specific disclosure and notice with respect to the claims and Causes of Action that are subject to the Third-Party Releases, and no other disclosure or notice is necessary.  The Third-Party Releases are consensual because they apply only to (i) holders of Impaired Claims that did not vote on the Plan or that voted to reject the Plan but did not opt out of the Third-Party Releases on the Ballots after clear notice of the right to opt out and that they would be bound by confirmation of the Plan if they did not opt out; (ii) holders of Impaired Claims that voted to accept to accept the Plan and did not opt out; (iii) the UFCW Local One 401(k) Savings Fund; and (iv) the other Released Parties (other than the Debtors and the Reorganized Debtors). Section 10.6(b) of the Plan, which provides for the Third Party Releases, is specific in language, integral to the Plan, and given for adequate consideration.

(d)       As noted on the record of the Confirmation Hearing, no creditor or shareholder that is a Releasing Party under the Plan has objected to the Third Party Releases or

WEIL:\96792719\1\77738.0004

to confirmation of the Plan.  Accordingly, pursuant to section 1141(a) of the Bankruptcy Code, the Third-Party Releases are binding on the Releasing Parties.

(e)    In any event, the Third-Party Releases satisfy the legal standard for approval of non-consensual third-party releases established in *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005) because, as established at the Confirmation Hearing, among other things, the Released Parties have provided substantial consideration to the Debtors' Estates and the claims that are the subject of the Third Party Releases would indirectly impact the Debtors' reorganization by way of indemnity or contribution, or by undermining the compromises and settlements that are the foundation of achieving the consensual Plan.

(f)    The exculpation provided in Section 10.7 of the Plan is reasonable in scope, consistent with the Plan's compromises and settlements, and does not relieve any party of liability for an act or omission to the extent such act or omission is the result of gross negligence, willful misconduct, or intentional fraud.

(g)    The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the approval of the injunctions, stays, releases, and exculpation provided in the Plan, including Sections 10.5, 10.6 and 10.7 thereof.  Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the injunctions, exculpations, and releases set forth in the Plan, including those set forth in Sections 10.5, 10.6, and 10.7 thereof, are appropriate and consistent with the Bankruptcy Code and applicable law and are approved.

NN.    <u>Executory Contracts and Unexpired Leases</u>. Article VIII of the Plan, which governs the assumption and rejection of executory contracts and unexpired leases,

satisfies the requirements of section 365 of the Bankruptcy Code. The Debtors have exercised reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases. Each assumption of an executory contract or unexpired lease pursuant to Article VIII of the Plan and the Assumption Schedule shall be legal, valid, and binding upon the Debtors or Reorganized Debtors, and their successors and assigns, and on all non-Debtor parties and their successors and assigns to each such executory contract or unexpired lease, all to the same extent as if such assumption had been effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order. The Debtors have appropriately satisfied the Cure Amount, or provided adequate assurance that the Debtors or Reorganized Debtors, as applicable, will satisfy the Cure Amount, under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the Plan and/or the Assumption Schedule. The executory contracts to be rejected pursuant to Article VIII of the Plan shall be deemed rejected effective upon the occurrence of the Effective Date.

OO.     Global Settlement.  The Global Settlement was negotiated in good faith and at arm's length and is an essential element of the Plan.  It is fair, equitable, and in the best interests of the Debtors, the Debtors' Estates, the Debtors' creditors, and all parties in interest, and satisfies the standards for approval under Bankruptcy Rule 9019.

PP.     Expiration of Challenge Period.  On April 5, 2018, the Court entered the DIP Order.  Pursuant to Paragraph 42 of the DIP Order, the Creditors' Committee was authorized to investigate, among other things, the Prepetition Lien and Claim Stipulations (as defined in the DIP Order).  The Challenge Deadline (as defined in the DIP Order) occurred on June 4, 2018.

WEIL:\96792719\1\77738.0004

QQ.    Objections.  All parties have had a full and fair opportunity to object to confirmation of the Plan and to litigate all issues raised in the Objections, or which might have been raised, and the Objections have been fully considered by the Court and, to the extent not previously resolved, overruled for the reasons stated in the Decision and herein.

RR.    Retention of Jurisdiction.  The Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    Confirmation.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan, all Exhibits thereto, and the Plan Supplement are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

2.    Plan Modifications and Amendments.  The Debtors may, upon order of the Bankruptcy Court, amend, modify, or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement to cure any non-substantive ambiguity, defect (including any technical defect), or inconsistency without further order or approval of the Bankruptcy Court.

3.    Plan Supplement and Exhibits to the Plan.  The documents contained in the Plan Supplement (including, without limitation, the Amended Organizational Documents, the Shareholders Agreement, the GUC Litigation Trust Agreement, the LLC Transfer Transactions, and the Assumption Schedule, but excluding the Management Incentive Plan Term Sheet) and

Exhibits to the Plan, and any amendments, modifications, and supplements thereto, and the execution, delivery, and performance thereof by the Debtors, are authorized and approved.

4.      <u>Objections</u>.  All Objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan, are overruled on the merits.

5.      <u>Plan Classification Controlling</u>.  The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, and (c) shall not be binding on the Debtors.

6.      <u>Treatment of Allowed Claims and Interests</u>.   In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.   The entry of this Confirmation Order constitutes this Court's approval of the treatment of all such Claims and Interests, as well as a finding by this Court that such treatment is in the best interests of the Debtors, their estates, and holders of Claims and Interests, and is fair, equitable, and reasonable.

7.      <u>Incorporation of UFCW Local One Settlement</u>.  Pursuant to Section 13 of the UFCW Local One Settlement Agreement, the terms and conditions of the UFCW Local One

Settlement are incorporated in the Plan as if fully set forth in the Plan, and shall be binding on the Debtors, the Reorganized Debtors, and all other parties in interest, to the extent applicable.

8.    <u>Approval of Global Settlement and Allowance of Senior Secured Notes Deficiency Claim</u>.  The Global Settlement is authorized and approved as fair and reasonable and shall become effective on the Effective Date, and the Debtors' obligations thereunder are legal, valid, binding, and enforceable.

9.    <u>LLC Transfer</u>.  Pursuant to Section 5.4(b) of the Plan, in accordance with the APA and the other LLC Transfer Transactions, (i) substantially all of the Assets directly owned by Holdings II shall be transferred to and vest in the Acquisition Companies free and clear of all Claims, Liens, charges, encumbrances, and interests, and (ii) subject to the terms of the Plan, including sections 10.4, 10.5, 10.6, and 10.7 thereof, the Acquisition Companies shall assume all of the obligations of Holdings II pursuant to the Plan and all rights of Holdings II under the Plan shall vest in the Acquisition Companies.  For the avoidance of doubt, none of the GUC Litigation Trust Causes of Action directly or indirectly owned by Holdings II nor the stock of Tops Markets II Corporation owned by Tops Holding LLC shall be transferred directly or indirectly to the Acquisition Companies.  Additionally, the transfer of the GUC Litigation Trust Causes of Action and the GUC Litigation Trust Payment to the GUC Litigation Trust shall occur before the LLC Transfer occurs.

10.    <u>Restructuring Transactions; Effectuating Documents</u>.    Following the Confirmation Date or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, may, with the consent of the Requisite Ad Hoc Committee Members (such consent not to be unreasonably withheld), take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate

agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan, (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or federal law, (iv) the execution and delivery of the Definitive Documents, (v) the issuance of securities, all of which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order, or rule, (vi) such other transactions that are necessary or appropriate to implement the Plan in the most tax efficient manner, and (vii) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law, the Exit ABL Documents, the Exit Term Loan Documents, the New Second Lien Notes Indenture, or the LLC Transfer Transaction Documents (if applicable), *provided that* none of the foregoing actions shall violate the terms of any executory contract or unexpired lease assumed pursuant to the Plan or otherwise during the Chapter 11 Cases.

11.     Each officer, member of the board of directors, or manager of the Debtors is (and each officer, member of the board of directors, or manager of the Reorganized Debtors shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and

on behalf of the Debtors and the Reorganized Debtors, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorizations, consents, or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders or directors or managers of the Debtors or the Reorganized Debtors) except for those expressly required pursuant to the Plan.

12.    All matters provided for in the Plan involving the corporate structure of the Debtors or Reorganized Debtors, or any corporate, limited liability company, or related action required by the Debtors or Reorganized Debtors in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors or Reorganized Debtors, and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or Reorganized Debtors.

13.    <u>Continued Corporate Existence</u>.    Pursuant to Section 5.6 of the Plan, except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Organizational Documents.  On or after the Effective Date, each Reorganized Debtor may, in its sole discretion, take such action that may be necessary or appropriate as permitted by applicable law, instruments and agreements, and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate.  After the Effective Date, the Reorganized Debtors shall be authorized to dissolve the Debtors or the Reorganized Debtors in accordance with applicable law, *provided that*, for so long as the GUC Litigation Trust remains in existence, Debtor TM1, LLC shall not be dissolved and the chapter 11 case for TM1,

LLC shall not be closed.  Tops MBO Corporation, Holdings II, and Tops Markets II Corporation shall be dissolved on or as promptly as practicable after the Effective Date.  Any such dissolution described in this paragraph may be effective as of the Effective Date pursuant to this Confirmation Order without any further action by any shareholder, director, manager, or member of the Debtors.

14.      Approval of Exit Facilities.  Pursuant to Section 5.7 of the Plan, on the Effective Date, and solely to the extent that the DIP ABL Lenders consent to the refinancing of the DIP ABL Facility by the Exit ABL Facility (which refinancing may be done through a cashless settlement), (i) all Obligations (as such term is defined in the DIP ABL Credit Agreement), other than DIP Professional Fees, shall be automatically converted to and deemed to be Obligations under, and as defined in, the Exit ABL Credit Agreement (ii) the letters of credit issued and outstanding under the DIP ABL Credit Agreement shall be converted to letters of credit deemed issued and outstanding under the Exit ABL Credit Agreement, and (iii) all Collateral (as such term is defined in the DIP ABL Credit Agreement), other than Avoidance Actions, that secures the Obligations under the DIP ABL Documents shall be reaffirmed, ratified and shall automatically secure all Obligations under the Exit ABL Documents in the order of priority set forth in Section 5.7(c) of the Plan.  If the holders of the Allowed DIP ABL Claims do not agree to receive pro rata interests in the Exit ABL Facilities, the Liens and security interests that secure the Obligations under the DIP ABL Documents shall not be released until the payment in full in Cash of the Allowed DIP ABL Claims in accordance with Section 2.4(a) of the Plan.

15.      On the Effective Date, or as soon as reasonably practicable thereafter, all Obligations (as such term is defined in the DIP Term Loan Credit Agreement), other than DIP

Professional Fees, shall be repaid in full in Cash with the proceeds of the Exit Term Loans, together with the additional Exit Term Loans to be provided to the Debtors.  All Collateral (as such term is defined in the DIP Term Loan Credit Agreement), other than Avoidance Actions, that secures the Obligations under the DIP Term Loan Documents shall be reaffirmed, ratified and shall automatically secure all Obligations under the Exit Term Loan Documents in the order of priority set forth in Section 5.7(c) of the Plan.  The Exit ABL Facility and the Exit Term Loans and the proceeds thereof shall be used to (i) satisfy Allowed DIP Claims, (ii) fund other distributions, costs and expenses contemplated by the Plan, (iii) fund general working capital and for general corporate purposes of the Reorganized Debtors.

16.    Pursuant to Section 5.7(c) of the Plan, the Obligations under the Exit ABL Documents shall be secured by valid and perfected (i) first priority security interests in, and Liens on, the DIP ABL Priority Collateral, and (ii) third priority security interests in, and Liens on, the DIP Term Loan Priority Collateral.  The Obligations under the Exit Term Loan Documents shall be secured by valid and perfected (i) first priority security interests in, and Liens on, the DIP Term Loan Priority Collateral, and (ii) second priority security interests in, and Liens on, the DIP ABL Priority Collateral. The New Second Lien Notes shall be secured by valid and perfected (i) second priority security interests in, and Liens on, the DIP Term Loan Priority Collateral, and (ii) third priority security interests in, and Liens on, the DIP ABL Priority Collateral.

17.    On the Effective Date, the Exit ABL Credit Agreement and the Exit Term Loan Credit Agreement shall be executed and delivered.   The Reorganized Debtors or Summit, as applicable, are hereby authorized to execute, deliver, and enter into and perform under the Exit ABL Documents and the Exit Term Loan Documents without further notice to or order of

WEIL:\96792719\1\77738.0004

the Court, or the need for any further corporate or limited liability company action and without further action by the holders of Claims or Interests.

18.  <u>Approval of New Second Lien Notes</u>.  Pursuant to Section 5.8 of the Plan, on the Effective Date, Reorganized Tops Markets shall issue the New Second Lien Notes on the terms set forth in the Plan and the New Second Lien Notes Indenture.  The Liens granted to secure the Obligations under the New Second Lien Notes shall be subject to customary intercreditor arrangements and shall be in the order of priority set forth in Section 5.7(c) of the Plan.

19.  On the Effective Date, the New Second Lien Notes Indenture shall be executed and delivered.  The Reorganized Debtors are hereby authorized to execute, deliver, and enter into and perform under the New Second Lien Notes Indenture without the need for any further corporate or limited liability company action and without further action by the holders of Claims or Interests.

20.  <u>Authorization, Issuance, and Distribution of New Second Lien Notes and New Equity Interests</u>.  Pursuant to Section 5.9 of the Plan, on and after the Effective Date, (i) Reorganized Tops Markets is authorized to issue or, cause to be issued, and shall issue the New Second Lien Notes and execute and deliver the New Second Lien Notes Documents, and (ii) and in accordance with the APA and the LLC Transfer Transaction Documents, Summit shall issue the New Equity Interests and shall contribute the New Equity Interests indirectly to the Acquisition Companies, and, immediately thereafter, the Acquisition Companies shall transfer the New Equity Interests to Holdings II, and, in each case, Reorganized Tops Markets, Holdings II or Reorganized Holdings, as applicable, shall direct DTC to distribute the New Second Lien Notes or New Equity Interests, as applicable, to the holders of the Senior Secured Notes Claims

in accordance with the terms of Sections 4.3 and 6.8 of the Plan, without the need for any further corporate, limited liability company, or shareholder action. All of the New Equity Interests distributable under the Plan shall be duly authorized, validly issued, and fully paid and non-assessable. On the Effective Date, each Person that receives any portion of the New Equity Interests shall be deemed to have executed, without any further action by the Debtors or any other party, the Shareholders Agreement. Each Person that receives any option, warrant, right, or any other interest that is exercisable, convertible, or exchangeable into New Equity Interests shall, upon the exercise, conversion, or exchange of any such option warrant, right, or other interest, be deemed to have executed, without any further action by the Reorganized Debtors or any other party, the Shareholders Agreement.

21.    <u>Section 1145 Exemption</u>.  Pursuant to Section 5.10 of the Plan, the offer, issuance, and distribution of the New Second Lien Notes and the New Equity Interests, as applicable, under the Plan to holders of Senior Secured Notes Claims under Section 4.3 of the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from registration under (i) the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of Securities.

22.    Pursuant to section 1145 of the Bankruptcy Code, any securities issued under the Plan that are exempt from such registration pursuant to section 1145(a) of the Bankruptcy Code will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such

WEIL:\96792719\1\77738.0004

securities or instruments, (iii) the restrictions, if any, on the transferability of such securities and instruments, including any restrictions on the transferability under the terms of the Amended Organizational Documents, (iv) any applicable procedures of DTC, and (v) applicable regulatory approval.

23.    <u>Allowance of OpCo Unsecured Notes Claims</u>.    The OpCo Unsecured Notes Claim shall be Allowed as of the Effective Date as a Class 4 General Unsecured Claim in the aggregate principal amount of $67,500,000, plus accrued but unpaid interest (including any applicable default interest), plus any other unpaid premiums, fees, costs, or other amounts due under the OpCo Unsecured Notes Indenture, in each case, up to but not including the Commencement Date.  The foregoing is without prejudice to the rights of the OpCo Unsecured Notes Trustee and the HoldCo Unsecured Notes Trustee to file a claim for additional amounts for the period subsequent to the Commencement Date and also is without prejudice to the rights of the Reorganized Debtors and the GUC Litigation Trustee to object thereto.

24.    <u>Cancellation of Existing Securities and Agreements</u>.    Pursuant to Section 5.11 of the Plan, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Debtors, on the Effective Date, all agreements, instruments, and other documents evidencing any Allowed DIP ABL Claims, Allowed DIP Term Loan Claims, Allowed Senior Secured Notes Claims, Allowed OpCo Unsecured Notes Claims and Allowed HoldCo Unsecured Notes Claims, or any Interest (other than Intercompany Interests that are not modified by the Plan) and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

WEIL:\96792719\1\77738.0004

25.    Notwithstanding such cancellation and discharge and the releases contained in Article X of the Plan, the DIP ABL Credit Agreement, the DIP Term Loan Credit Agreement, the Senior Secured Notes Indenture, the OpCo Unsecured Notes Indenture, and the HoldCo Unsecured Notes Indenture shall continue in effect solely to the extent necessary to (i) allow the holders of Allowed DIP ABL Claims, Allowed DIP Term Loan Claims, Allowed Senior Secured Notes Claims, Allowed OpCo Unsecured Notes Claims and Allowed HoldCo Unsecured Notes Claims to receive distributions under the Plan, (ii) allow the Debtors, the Reorganized Debtors, the Senior Secured Notes Trustee, the OpCo Unsecured Notes Trustee, the HoldCo Unsecured Notes Trustee and the Disbursing Agent to make post-Effective Date Distributions or take such other action pursuant to the Plan on account of the Allowed ABL Claims, Allowed DIP Term Loan Claims, Allowed Senior Secured Notes Claims, Allowed OpCo Unsecured Notes Claims, and Allowed HoldCo Unsecured Notes Claims, as applicable, and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims in accordance with the Plan, (iii) allow holders of Claims to retain their respective rights and obligations vis-à-vis other holders of Claims pursuant to any applicable loan documents, (iv) allow the DIP ABL Agent, the DIP Term Loan Agent, the Senior Secured Notes Trustee, the OpCo Unsecured Notes Trustee and/or the HoldCo Unsecured Notes Trustee to enforce any obligations owed to them under the Plan (including seeking compensation and reimbursement for any reasonable and documented fees and expenses pursuant to their respective Charging Liens as provided in the Indentures), (v) permit the DIP ABL Agent, the DIP Term Loan Agent, the Senior Secured Notes Trustee, the OpCo Unsecured Notes Trustee and/or the HoldCo Unsecured Notes Trustee to perform any function necessary to effectuate the foregoing, and (vi) permit the DIP ABL Agent, the DIP Term Loan Agent, the Senior Secured Notes

WEIL:\96792719\1\77738.0004

Trustee, the OpCo Unsecured Notes Trustee and/or the HoldCo Unsecured Notes Trustee to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the DIP ABL Documents, the DIP Term Loan Documents, the Senior Secured Notes Indenture, the OpCo Unsecured Notes Indenture, or the HoldCo Unsecured Notes Indenture, as applicable, *provided that* nothing in Section 5.11 of the Plan shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Reorganized Debtors. For the avoidance of doubt, each of the Indenture Trustees shall be entitled to assert its respective Charging Liens arising under and in accordance with the applicable Indenture and any ancillary document, instrument, or agreement to obtain payment of its Indenture Trustee Fees and Expenses.

26.     Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors of their interests, as a result of the cancellations, terminations, satisfactions, releases, or discharges provided for in Section 5.11 of the Plan shall be deemed null and void and shall be of no force and effect.  Nothing contained herein or in the Plan shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or unexpired lease to the extent such executory contract or unexpired lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court, hereunder, or under the Plan.

27.     Except for the foregoing, on and after the Effective Date, all duties and responsibilities of the Indenture Trustees shall be fully discharged (i) unless otherwise specifically set forth in or provided for under the Plan, the Plan Supplement, or the Confirmation

WEIL:\96792719\1\77738.0004

Order, and (ii) except with respect to such other rights of the Indenture Trustees that, pursuant to the applicable Indentures, survive the termination of such Indentures. Subsequent to the performance by each Indenture Trustee of its obligations pursuant to the Plan and Confirmation Order, such Indenture Trustee and its agents shall be relieved of all further duties and responsibilities related to the applicable Indenture. The Reorganized Debtors shall reimburse the Senior Secured Notes Trustee for any reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of its counsel and agents) incurred after the Effective Date solely in connection with the implementation of the Plan, including but not limited to, making distributions pursuant to and in accordance with the Plan.

28.     <u>Retention of Causes of Action</u>.  Except as provided in Sections 5.21, 10.6(a), and 10.10 of the Plan, on the Effective Date, each Debtor or Reorganized Debtor shall retain all of its Causes of Action. Each Debtor or Reorganized Debtor may enforce, prosecute, settle, release, or compromise (or decline to do any of the foregoing) all such Causes of Action.

29.     <u>Officers and Boards of Directors</u>.   On the Effective Date, the initial directors of the New Board shall consist of (i) Mr. Frank Curci, the Debtors' current Chief Executive Officer and (ii) four additional members as designated by the Ad Hoc Committee. The identities of the additional members of the boards of directors or managers of the Reorganized Debtors shall be disclosed on or before the Effective Date.

30.     Except as otherwise provided in the Plan Supplement, the officers of the respective Reorganized Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date and in accordance with Sections 5.15 and 5.16 of the Plan, the Key Employee Agreements, and applicable non-bankruptcy law.

WEIL:\96792719\1\77738.0004

31.     Except to the extent that a member of the board of directors or managers, as applicable, of a Debtor continues to serve as a director or manager of such Debtor on and after the Effective Date, the members of the board of directors or managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date.

32.     Commencing on the Effective Date, each of the directors and managers of each of the Reorganized Debtors shall be elected and serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

33.     <u>Cancellation of Liens</u>.  Pursuant to Section 5.14 of the Plan, except as otherwise specifically provided in the Plan, including pursuant to Section 5.7 of the Plan, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an Other Secured Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors.

34.     <u>Employee Matters</u>.   Pursuant to Section 5.15 of the Plan, and subject to Section 5.16 of the Plan and the KERP Order, on the Effective Date, the Reorganized Debtors shall assume the Current Employee Arrangements, including the Key Employee Agreements,

*provided that* to the extent a Current Employee Arrangement or Benefit Plan provides solely for an award or potential award of Existing Holdings II Interests or Existing MBO Interests, such Existing Holdings II Interests or Existing MBO Interests shall be treated in accordance with Sections 4.6 and 4.7 of the Plan, respectively, *provided further that* Insiders shall not receive any payments on account of amounts owed under the General Management Incentive Plan that have accrued between the Commencement Date and the Effective Date. Notwithstanding anything to the contrary in the Current Employee Arrangements or the Key Employee Agreements, the consummation of the Plan shall not be treated as or constitute a change in control or change of control or other similar transaction under the Current Employee Arrangements or the Key Employee Agreements.  For the avoidance of doubt, the Employment Arrangements for the Debtors' union employees shall be governed by the terms of the applicable Collective Bargaining Agreements, in accordance with Section 8.5 of the Plan.

35.    On the Effective Date, the Former Employee Arrangements shall be deemed rejected in accordance with Section 8.1 of the Plan, *provided that* the Reorganized Debtors shall continue to honor all retiree benefits in accordance with section 1129(a)(13) of the Bankruptcy Code.

36.    <u>GUC Litigation Trust</u>.

(a)    <u>Creation and Governance of the GUC Litigation Trust</u>.  On the Effective Date, the Debtors shall transfer the GUC Litigation Trust Payment to the GUC Litigation Trust and the Debtors and the GUC Litigation Trustee shall execute the GUC Litigation Trust Agreement and shall take all steps necessary to establish the GUC Litigation Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the GUC Litigation Trust Beneficiaries.  In the event of any conflict between the terms of the Plan and the

34

terms of the GUC Litigation Trust Agreement, the terms of the Plan shall govern.  Additionally, on the Effective Date, the Debtors shall transfer and shall be deemed to transfer to the GUC Litigation Trust all of their rights, title and interest in and to all of the GUC Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the GUC Litigation Trust Assets shall automatically vest in the GUC Litigation Trust free and clear of all Claims and Liens, subject only to (i) GUC Litigation Trust Interests, and (ii) the expenses of the GUC Litigation Trust as provided for in the GUC Litigation Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax.  The GUC Litigation Trustee shall be the exclusive trustee of the assets of the GUC Litigation Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the GUC Litigation Trustee's duties under the GUC Litigation Trust Agreement. The GUC Litigation Trust shall be governed by the GUC Litigation Trust Agreement and administered by the GUC Litigation Trustee.

(b)      The powers, rights and responsibilities of the GUC Litigation Trustee shall be specified in the GUC Litigation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Section 5.21 of the Plan.  The GUC Litigation Trustee shall hold and distribute the GUC Litigation Trust Assets in accordance with the provisions of the Plan and the GUC Litigation Trust Agreement.  Other rights and duties of the GUC Litigation Trustee and the GUC Litigation Trust Beneficiaries shall be as set forth in the GUC Litigation Trust Agreement.  After the Effective Date, the Debtors and the Reorganized Debtors shall have no interest in the GUC Litigation Trust Assets except as set forth in the GUC Litigation Trust Agreement.

WEIL:\96792719\1\77738.0004

(c)    <u>Purpose of the GUC Litigation Trust</u>. The GUC Litigation Trust shall be established for the purpose of liquidating the GUC Litigation Trust Assets, distributing the GUC Litigation Trust Distributable Proceeds, if any, reconciling General Unsecured Claims as provided for in the Plan and, if, as and to the extent determined by the GUC Litigation Trustee pursuant to the GUC Litigation Trust Agreement, distributing the GUC Litigation Trust Payment to the GUC Litigation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(d)    Except as otherwise ordered by the Bankruptcy Court, the GUC Litigation Trust Expenses shall be paid solely from the GUC Litigation Trust Assets in accordance with the Plan and the GUC Litigation Trust Agreement.

(e)    The GUC Litigation Trustee, on behalf of the GUC Litigation Trust, may employ, without further order of the Bankruptcy Court, professionals (including Professionals previously retained by the Creditors' Committee) to assist in carrying out its duties under the Plan and under the GUC Litigation Trust Agreement, and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the GUC Litigation Trust Assets in accordance with the Plan and the GUC Litigation Trust Agreement. The GUC Litigation Trust Agreement includes reasonable and customary provisions that allow for indemnification by the GUC Litigation Trust.  Any such indemnification obligations shall be the sole responsibility of the GUC Litigation Trust and payable solely from the GUC Litigation Trust Assets.

(f)    In furtherance of and consistent with the purpose of the GUC Litigation Trust and the Plan, the GUC Litigation Trustee, for the benefit of the GUC Litigation Trust, shall (i) hold the GUC Litigation Trust Assets for the benefit of the Litigation Trust Beneficiaries,

WEIL:\96792719\1\77738.0004

(ii) make distributions of GUC Litigation Trust Distributable Proceeds as provided in the Plan and in the GUC Litigation Trust Agreement and (iii) have the power and authority to prosecute and resolve any GUC Litigation Trust Causes of Action.  The GUC Litigation Trustee shall be responsible for all decisions and duties with respect to the GUC Litigation Trust and the GUC Litigation Trust Assets, except as otherwise provided in the GUC Litigation Trust Agreement. In all circumstances, the GUC Litigation Trustee shall act in the best interests of the GUC Litigation Trust Beneficiaries.

(g)    Compensation and Duties of the GUC Litigation Trustee. The terms of the GUC Litigation Trustee's employment, including the GUC Litigation Trustee's duties and compensation (which compensation shall be negotiated by the GUC Litigation Trustee and the Oversight Committee (as defined in the GUC Litigation Trust Agreement)), shall be set forth in the GUC Litigation Trust Agreement.   The GUC Litigation Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

(h)    Cooperation of Reorganized Debtors. Subject to the following paragraph and Section 5.21(f) of the Plan, the Debtors, Reorganized Debtors, or Acquisition Companies, as applicable, upon reasonable notice, shall provide reasonable cooperation with the GUC Litigation Trustee in the administration of the GUC Litigation Trust, including providing reasonable access to pertinent documents, including books and records, to the extent the Debtors, Reorganized Debtors, or Acquisition Companies have such information and/or documents, to the Litigation Trustee sufficient to enable the GUC Litigation Trustee to perform its duties hereunder. The Reorganized Debtors or Acquisition Companies, as applicable, shall reasonably cooperate with the GUC Litigation Trustee in the administration of the GUC Litigation Trust,

WEIL:\96792719\1\77738.0004

including, providing reasonable access to documents and current officers and directors with respect to (i) the prosecution of the GUC Litigation Trust Causes of Action, and (ii) contesting, settling, compromising, reconciling, and objecting to General Unsecured Claims, in each case, the GUC Litigation Trust agrees to reimburse reasonable, documented out-of-pocket expenses for preservation of documents, copying or similar expenses (excluding, for the avoidance of doubt, any attorneys' fees, consulting fees or the like, or compensation of time spent by such officers, directors or any other employee of the Reorganized Debtors in providing such cooperation). The collection, review, and preservation of documents for any investigation or litigation by the GUC Litigation Trust shall be at the expense of the GUC Litigation Trust.

(i)     <u>Preservation of Privilege</u>.  Pursuant to Section 5.21(f) of the Plan, the Debtors and the GUC Litigation Trust shall enter into a common interest agreement whereby the Debtors and Reorganized Debtors will be able to share documents, information or communications (whether written or oral) relating to the GUC Litigation Trust Assets and contesting, settling, compromising, reconciling, and objecting to General Unsecured Claims that are otherwise covered by attorney-client privilege, work product privilege, or other privileges or immunity.  The GUC Litigation Trust shall seek to preserve and protect all applicable privileges attaching to any such documents, information, or communications.   The GUC Litigation Trustee's receipt of such documents, information or communications shall not constitute a waiver of any privilege.   All privileges shall remain in the control of the Debtors or the Reorganized Debtors, as applicable, and the Debtors or the Reorganized Debtors retain the right to waive their own privileges.

(j)     <u>United States Federal Income Tax Treatment of the GUC Litigation Trust</u>. The GUC Litigation Trust shall qualify as a "liquidating trust" within the meaning of Treas. Reg.

§ 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a

"grantor trust" within the meaning of Sections 671 through 679 of the Tax Code to the holders of

General Unsecured Claims, consistent with the terms of the Plan.  The sole purpose of the GUC

Litigation Trust shall be the liquidation and distribution of the GUC Litigation Trust Assets in

accordance with Treas. Reg. § 301.7701-4(d), including the resolution of General Unsecured

Claims in accordance with the Plan, with no objective to continue or engage in the conduct of a

trade or business.   All parties (including the Debtors and the Estates, holders of General

Unsecured Claims and GUC Litigation Trustee) shall report consistently with such treatment. All

parties shall report consistently with the valuation of the GUC Litigation Trust Assets transferred

to the GUC Litigation Trust as determined by the GUC Litigation Trustee (or its designee). The

GUC Litigation Trustee shall be responsible for filing returns for the GUC Litigation Trust as a

grantor trust pursuant to Treas. Reg. § 1.671-4(a).   The GUC Litigation Trustee shall annually

send to each holder of an interest in the GUC Litigation Trust a separate statement regarding the

receipts and expenditures of the trust as relevant for U.S. federal income tax purposes.  Subject

to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to

the contrary (including the receipt by the GUC Litigation Trustee of a private letter ruling if the

GUC Litigation Trustee so requests one, or the receipt of an adverse determination by the

Internal Revenue Service upon audit if not contested by the GUC Litigation Trustee), the GUC

Litigation Trustee will timely elect to (i) treat any portion of the GUC Litigation Trust allocable

to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section

1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law,

report consistently with the foregoing for state and local income tax purposes.  All parties

(including the Debtors and the Estates, holders of General Unsecured Claims and GUC

WEIL:\96792719\1\77738.0004

Litigation Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing.

(k)      Tax Reporting. The GUC Litigation Trustee shall file tax returns for the GUC Litigation Trust treating the GUC Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(l)      Except to the extent definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations, the receipt by the GUC Litigation Trustee of a private letter ruling if the GUC Litigation Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the GUC Litigation Trust as a liquidating trust for purposes of the Tax Code and applicable Treasury Regulations, as soon as reasonably practicable after the GUC Litigation Trust Assets are transferred to the GUC Litigation Trust, the GUC Litigation Trustee shall make a good faith valuation of the GUC Litigation Trust Assets.  Such valuation shall be made available from time to time to all parties to the GUC Litigation Trust Agreement, to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(m)      Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the GUC Litigation Trustee of a private letter ruling if the GUC Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the GUC Litigation Trustee), allocations of GUC Litigation Trust taxable income or loss shall be allocated by reference to the manner in which any economic gain or loss would be borne immediately after a hypothetical liquidating distribution of the remaining

WEIL:\96792719\1\77738.0004

GUC Litigation Trust Assets.  The tax book value of the GUC Litigation Trust Assets for purpose of this paragraph shall equal their fair market value on the date the GUC Litigation Trust Assets are transferred to the GUC Litigation Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(n)    The GUC Litigation Trustee shall be responsible for payment, out of the GUC Litigation Trust Assets, of any taxes imposed on the GUC Litigation Trust or its assets (including in respect of any distributions or deemed distributions in connection with the allowance of Disputed Claims).  In the event of insufficient cash allocable to a particular Disputed Claim, the GUC Litigation Trustee shall be authorized to sell all or part of the underlying assets reserved in respect of such Claim to pay the associated tax liability.

(o)    Subject to the terms of the GUC Litigation Trust Agreement, the GUC Litigation Trustee shall distribute such notices to the GUC Litigation Trust Beneficiaries as the GUC Litigation Trustee determines are necessary or desirable.

(p)    GUC Litigation Trust Assets.  The GUC Litigation Trustee shall have the exclusive right on behalf of the GUC Litigation Trust, to institute, file, prosecute, enforce, settle, compromise, release, abandon, or withdraw any and all GUC Litigation Trust Causes of Action without any further order of the Bankruptcy Court, except as otherwise provided in the Plan or in the GUC Litigation Trust Agreement.  From and after the Effective Date, the GUC Litigation Trustee, in accordance with section 1123(b)(3) of the Bankruptcy Code, and on behalf of the GUC Litigation Trust, shall serve as a representative of the Estates, solely for purposes of carrying out the GUC Litigation Trustee's duties under the GUC Litigation Trust Agreement. In connection with the investigation, prosecution and/or compromise of the GUC Litigation Trust

WEIL:\96792719\1\77738.0004

Causes of Action, the GUC Litigation Trustee may expend such portion of the GUC Litigation Trust Assets as the GUC Litigation Trustee deems necessary.

(q)      Litigation Trust Fees and Expenses.  From and after the Effective Date, the GUC Litigation Trustee, on behalf of the GUC Litigation Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the GUC Litigation Trust and any professionals retained by the GUC Litigation Trust from the GUC Litigation Trust Assets, except as otherwise provided in the GUC Litigation Trust Agreement.

(r)      Distribution of Unrestricted Cash. The GUC Litigation Trustee shall distribute to the GUC Litigation Trust Beneficiaries on account of their interests in the GUC Litigation Trust, at least annually, its net income plus all net proceeds from the sale of assets, except that the GUC Litigation Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the GUC Litigation Trust Assets or to meet claims and contingent liabilities.

(s)      Litigation Trust Funding.  In the event the GUC Litigation Trust requires litigation funding (comprised of reasonable legal and other reasonable professional fees, costs and expenses) in excess of the GUC Litigation Trust Payment, the GUC Litigation Trustee may obtain litigation financing from third parties on terms acceptable to the GUC Litigation Trustee in its sole discretion, subject to the terms of the GUC Litigation Trust Agreement.

(t)      Distributions to Litigation Trust Beneficiaries.  Subject to the terms of the GUC Litigation Trust Agreement, the GUC Litigation Trustee may, in its discretion, distribute any portion of the GUC Litigation Trust Payment to the holders of GUC Litigation Trust

WEIL:\96792719\1\77738.0004

Interests at any time and/or use such funds for any purpose permitted under the Plan, the GUC Trust Agreement and applicable law.

(u)    <u>Cash Investments</u>.    Subject to the terms of the GUC Litigation Trust Agreement, the GUC Litigation Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided that* such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

(v)    <u>Single Satisfaction of Allowed General Unsecured Claims</u>. Notwithstanding anything to the contrary in the Plan, in no event shall holders of Allowed General Unsecured Claims recover more than the full amount of their Allowed General Unsecured Claims from the GUC Litigation Trust Distributable Proceeds, if any, and the GUC Litigation Trust Payment.

(w)    <u>Dissolution of the GUC Litigation Trust</u>.    In accordance with the GUC Litigation Trust Agreement, the GUC Litigation Trustee and the GUC Litigation Trust shall be discharged or dissolved, as the case may be, at such time as (i) the GUC Litigation Trustee determines that the pursuit of additional GUC Litigation Trust Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such claims and (ii) all distributions of GUC Litigation Trust Distributable Proceeds required to be made by the GUC Litigation Trustee under the Plan have been made, but in no event shall the GUC Litigation Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not

adversely affect the status of the GUC Litigation Trust as a liquidating trust for federal income

tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the GUC

Litigation Trust Assets.   Upon dissolution of the GUC Litigation Trust, any remaining GUC

Litigation Trust Assets shall be distributed to all GUC Litigation Trust Beneficiaries in

accordance with the Plan and the GUC Litigation Trust Agreement as appropriate.

37.    <u>Provisions Governing Distributions and Procedures for Disputed Claims</u>.

The provisions set forth in Article VI and Article VII of the Plan regarding distributions on

account of Allowed Claims and procedures for Disputed Claims, respectively, are fair and

reasonable, and are hereby approved.

38.    <u>Setoffs and Recoupments</u>.   The Debtors and the Reorganized Debtors, as

applicable, may, but shall not be required to, set off or recoup against any Claim, and any

distribution to be made on account of such Claim, any and all claims, rights, and Causes of

Action of any nature whatsoever that the Debtors or the Reorganized Debtors may have against

the holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

*provided that* neither the failure to do so nor the allowance of any Claim hereunder shall

constitute a waiver or release by a Debtor or a Reorganized Debtor or its successor of any claims,

rights, or Causes of Action that a Debtor or Reorganized Debtor or its successor or assign may

possess against the holder of such Claim.

39.    <u>Objections to Claims</u>.   The Reorganized Debtors shall exclusively be

entitled to object to Claims, *provided that* the GUC Litigation Trustee shall exclusively be

entitled to object to General Unsecured Claims in Class 4.   After the Effective Date, the

Reorganized Debtors or the GUC Litigation Trust, as applicable, shall have and retain any and

all rights and defenses that the Debtors had with regard to any Claim to which they may object,

44

except with respect to any Claim that is Allowed. Any objections to Claims shall be served and filed on or before the later of (a) one-hundred and eighty (180) days after the Effective Date, and (b) such later date as may be fixed by the Bankruptcy Court (as the same may be extended by the Bankruptcy Court), *provided that*, the deadline for the GUC Litigation Trustee to file and serve objections to General Unsecured Claims in Class 4 shall be tolled until the earlier of (i) ninety (90) days after any claims against the Prior Sponsor Group that constitute GUC Litigation Trust Causes of Action have been fully liquidated, and (ii) such later date as may be fixed by the Bankruptcy Court (as the same may be extended by the Bankruptcy Court).

40. <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

(a)    Pursuant to Section 8.1 of the Plan, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date, (iv) is a Current Employee Arrangement (including the Key Employee Agreements), or (v) is specifically designated as a contract or lease to be assumed on the Assumption Schedule.

(b)    Subject to the occurrence of the Effective Date, entry of this Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan (including pursuant to the LLC Transfer) shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms. All executory

45

contracts and unexpired leases rejected or deemed rejected under the Plan shall be rejected as of the Effective Date.

(c)    On October 22, 2018, and 25, 2018, in accordance with section 8.2(b) of the Plan, the Debtors filed, and served on the appropriate parties, the Assumption Notice and the Supplemental Assumption Notice (collectively, the "**Assumption Notices**").    On October 25, 2018, the Debtors filed the Plan Supplement, which includes, among other things, the Assumption Schedule.  The Assumption Notices and the Assumption Schedule set forth a list of executory contracts and unexpired leases that the Debtors intend to assume, or assume and assign, as applicable pursuant to, and in connection with, the Plan, and also setting forth the Cure Amount, if any.  Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount was required to be filed, served, and actually received by the Debtors within ten (10) days of the service of the applicable Assumption Notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.  Any counterparty to an executory contract or unexpired lease that failed to object timely to the proposed assumption, assumption and assignment, or Cure Amount (i) is hereby deemed to have assented to such assumption, assumption and assignment, or Cure Amount, notwithstanding any provision of its executory contract or unexpired lease that purports to (A) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (B) terminate or permit the termination of such contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or the Reorganized Debtors or terminating or modifying such contract or lease on account of transactions

WEIL:\96792719\1\77738.0004

contemplated by the Plan, and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, and the Cure Amount thereafter.

(d)    Pursuant to Section 8.2(c) of the Plan, if there is a dispute pertaining to the assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to the assumption being effective; *provided that* the Debtors or the Reorganized Debtors may settle any such dispute without any further notice to, or action by, any party or order of the Bankruptcy Court.

(e)    Pursuant to Section 8.2(d) of the Plan, to the extent a dispute relates to Cure Amounts, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such cure dispute, *provided that* the Debtors or the Reorganized Debtors reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the Cure Amount by the counterparty to such executory contract or unexpired lease.

(f)    Pursuant to Section 8.2(e) of the Plan, assumption or assumption and assignment (including pursuant to the LLC Transfer) and full payment of any applicable Cure Amount of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired Lease.  Any proofs of claim filed with respect to an executory contract or unexpired lease that has been assumed or

assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

41.     Rejection Damages Claims.  In the event that the rejection of an executory contract or unexpired lease under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, the Acquisition Companies or their respective Estates, properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors or the Reorganized Debtors, as applicable, no later than forty-five (45) days after the Effective Date.

42.     Survival of the Debtors' Indemnification Obligations.  Pursuant to Section 8.4 of the Plan, any and all obligations of the Debtors pursuant to their corporate charters, bylaws, limited liability company agreements, memorandum and articles of association, or other organizational documents or agreements to indemnify officers, directors, agents, or employees employed by the Debtors on or after the Commencement Date with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; *provided that* the Reorganized Debtors shall not indemnify any persons for any claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes fraud, gross negligence or willful misconduct. All such obligations shall be deemed and treated as executory contracts that are assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized

WEIL:\96792719\1\77738.0004

Debtors and Summit. Any claim based on the Debtors' obligations pursuant to Section 8.4 of the Plan and this paragraph shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.  None of the Reorganized Debtors or Summit will amend and/or restate their respective governance documents before or after the Effective Date to terminate or adversely affect any obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.

43.    Collective Bargaining Agreements.  Pursuant to Section 8.5 of the Plan, the New Teamsters Collective Bargaining Agreements shall remain in full force and effect on and after the Effective Date.

44.    The Amended UFCW Local One Collective Bargaining Agreements and the Amended UFCW Local 1776 KS Collective Bargaining Agreement shall remain in full force and effect after the Effective Date subject to the respective terms thereof and in accordance with the UFCW Local One Settlement Order.

45.    On the Effective Date, the Debtors shall assume the Other Collective Bargaining Agreements, subject to the respective terms thereof, pursuant to section 1113 of the Bankruptcy Code, and the Other Collective Bargaining Agreements shall continue as obligations of the applicable Reorganized Debtors.

46.    Insurance Contracts.  Pursuant to Section 8.6 of the Plan, notwithstanding anything to the contrary in the Definitive Documents, the Plan, the Plan Supplement, any bar date notice or claim objection, any other document related to any of the foregoing (including, without limitation, any provision that purports to be preemptory or supervening, grants an injunction or release, requires any party to opt out of any releases or confers Bankruptcy Court jurisdiction):

49

(a)     On the Effective Date, all Insurance Contracts shall be deemed and treated as executory contracts and shall be assumed pursuant to section 105 and 365 of the Bankruptcy Code by the respective Reorganized Debtors, as applicable, and shall continue unaltered and in full force and effect thereafter in accordance with their respective terms, including with respect to the rights and interests of any Insurer to any collateral or security such Insurer holds with respect thereto, *provided that*, following the Effective Date and payment of any applicable Cure Amount, the rights of any Insurer to collateral or security shall be determined in accordance with the applicable Insurance Contracts.

(b)     On and after the Effective Date, the Reorganized Debtors shall become and remain liable for all of the Debtors' obligations under the Insurance Contracts, regardless of whether such obligations arise before or after the Effective Date, without the requirement or need for any Insurer to file a proof of claim or an Administrative Expense Claim, or object to any Cure Amount.

47.     <u>Assignment</u>.  Pursuant to Section 8.7 of the Plan, to the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned pursuant to the Plan (including pursuant to the LLC Transfer) shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or

WEIL:\96792719\1\77738.0004

unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable antiassignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

48.     Nothing in the Plan authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

49.     Reservation of Rights with Respect to Executory Contracts and Unexpired Leases.    Pursuant to Section 8.8 of the Plan, neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors, the Reorganized Debtors, or Summit have any liability thereunder.

50.     Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors, the Reorganized Debtors, or Summit under any executory or non-executory contract or unexpired or expired lease.

51.     Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Reorganized Debtors, or Summit, as applicable, under any executory or non-executory contract or unexpired or expired lease.

52.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.    Pursuant to Section 8.9 of the Plan, unless otherwise provided in the Plan, each

WEIL:\96792719\1\77738.0004

executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and executory contracts and unexpired leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

53.    <u>Conditions Precedent to Confirmation</u>.    The conditions precedent to confirmation, set forth in Section 9.1 of the Plan, have occurred.

54.    <u>Vesting of Assets</u>.    On the Effective Date, pursuant to section 10.1 of the Plan and sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the Reorganized Debtors (including the Acquisition Companies, as applicable) free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan, this Confirmation Order, the Exit ABL Documents, the Exit Term Loan Documents, or the LLC Transfer Transaction Documents (if applicable).    On and after the Effective Date, the Reorganized Debtors may take any action, including the operation of their businesses, the use, acquisition, sale, lease, and disposition of property, and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provisions of the Bankruptcy Code, except as expressly provided in the Plan.    Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees,

WEIL:\96792719\1\77738.0004

disbursements, expenses, or related support services without application to the Bankruptcy Court.

55.    <u>Binding Effect</u>.  As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders (a) were Impaired or Unimpaired under the Plan, (b) were deemed to accept or reject the Plan, (c) failed to vote to accept or reject the Plan, (d) voted to reject the Plan, or (e) receive any distribution under the Plan.

56.    <u>Discharge of Claims and Termination of Interests</u>.  Pursuant to Section 10.3 of the Plan, upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan, each holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors against the Debtors, the Reorganized Debtors, Summit, the Acquisition Companies or any of its or their Assets or property, whether or not such holder has filed a proof of claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

57.    <u>Term of Injunctions or Stays</u>.  Unless otherwise provided in the Plan or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in

WEIL:\96792719\1\77738.0004

existence on the Confirmation Date, shall remain in full force and effect until the later of the

Effective Date and the date indicated in the order providing for such injunction or stay.

(a)      Injunction.  Pursuant to Section 10.5 of the Plan, all holders of Claims and

Interests and other parties in interest, along with their respective present or former employees,

agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to

interfere with the implementation or consummation of the Plan.

(b)      Except as expressly provided in the Plan, this Confirmation Order, or a

separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims

against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has

been filed or not and whether or not such Entities vote in favor of, against or abstain from voting

on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other

parties in interest, along with their respective present or former employees, agents, officers,

directors, principals, and affiliates are permanently enjoined, on and after the Effective Date,

with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any

manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any

proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors

or the Reorganized Debtors or the property of any of the Debtors or the Reorganized Debtors, (ii)

enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise

recovering by any manner or means, whether directly or indirectly, any judgment, award, decree,

or order against the Debtors or the Reorganized Debtors or the property of any of the Debtors or

the Reorganized Debtors, (iii) creating, perfecting, or otherwise enforcing in any manner,

directly or indirectly, any encumbrance of any kind against the Debtors or the Reorganized

Debtors or the property of any of the Debtors or the Reorganized Debtors, (iv) asserting any right

WEIL:\96792719\1\77738.0004

of setoff, directly or indirectly, against any obligation due from the Debtors or the Reorganized

Debtors or against property or interests in property of any of the Debtors or the Reorganized

Debtors; and (v) acting or proceeding in any manner, in any place whatsoever, that does not

conform to or comply with the provisions of the Plan.

(c)    By accepting distributions pursuant to the Plan, each holder of an Allowed

Claim or Interest extinguished, discharged, or released pursuant to the Plan shall be deemed to

have affirmatively and specifically consented to be bound by the Plan, including the injunctions

set forth herein and in Section 10.5 of the Plan.

(d)    The injunctions set forth herein and in Section 10.5 of the Plan shall

extend to any successors of the Debtors and the Reorganized Debtors, Summit, or the

Acquisition Companies, as applicable, and their respective property and interests in property.

58.    <u>Releases by the Debtors</u>.  Subject to Sections 10.6(c) and 10.6(d) of the

Plan, as of the Effective Date, except for the right to enforce the Plan or any right or obligation

arising under the Definitive Documents that remains in effect after the Effective Date, for good

and valuable consideration, on and after the Effective Date, the Debtors, the Reorganized

Debtors, Summit and the Acquisition Companies, if applicable, the Ad Hoc Committee and each

of its members, the DIP ABL Agent, the DIP ABL Lenders, the Prepetition ABL Agent, the

Prepetition ABL Lenders, the Senior Secured Notes Trustee, the DIP Term Loan Agent, the DIP

Term Loan Lenders, the Exit ABL Agent, the Exit ABL Lenders, the Exit Term Loan Agent, the

Exit Term Loan Lenders, the UFCW Local One and the UFCW Local One Benefit Funds, the

Creditors' Committee and each of its members, the GUC Litigation Trust, and with respect to

each of the foregoing entities, all Related Parties (collectively, the "**Released Parties**"), shall be

deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates, and

WEIL:\96792719\1\77738.0004

any Person seeking to exercise the rights of the Estates, including the GUC Litigation Trust and

any successors to the Debtors or any Estate representative appointed or selected pursuant to

section 1123(b)(3) of the Bankruptcy Code, from any and all claims, obligations, rights, suits,

judgments, damages, demands, debts, rights, Causes of Action (other than Causes of Action

against the Prior Sponsor Group), remedies, losses, and liabilities whatsoever, including any

derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or

the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated,

matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or

otherwise, that the Debtors, the Reorganized Debtors, or the Estates would have been legally

entitled to assert in their own right (whether individually or collectively) or on behalf of the

holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising

from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the

Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the

Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving

rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements

between the Debtors and any Released Party, the Restructuring, the restructuring of any Claim or

Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and the

Definitive Documents, or any related agreements, instruments, or other documents, and the

negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan,

or any other act or omission, in all cases based upon any act or omission, transaction, agreement,

event, or other occurrence taking place on or before the Effective Date; *provided that* nothing in

this paragraph shall be construed to release the Released Parties from gross negligence, willful

misconduct, or intentional fraud as determined by a Final Order.

WEIL:\96792719\1\77738.0004

59.    <u>Third-Party Releases</u>.

(a)    Pursuant to Section 10.6(b) of the Plan, as of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, in accordance with section 1141 of the Bankruptcy Code, each of the Released Parties shall be deemed released and discharged by each of the following (all such Persons or Entities, the "**Releasing Parties**"):

(i) the holders of Impaired Claims who abstain from voting on the Plan or vote to reject the Plan but do not opt-out of these releases on the Ballots;
(ii) the holders of Impaired Claims who vote to accept the Plan;

(iii) the UFCW Local One 401(k) Savings Fund;

(iv) each of the other Released Parties (other than the Debtors and the Reorganized Debtors); and

(v) with respect to any Entity in the foregoing clauses (i) through (iv), (x) such Entity's predecessors, successors, and assigns, and (y) all Persons entitled to assert Claims through or on behalf of such Entities with respect to the matters for which the releasing Entities are providing releases;

in each case, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including contract claims, claims under ERISA and all other statutory claims, claims for contributions, withdrawal liability, reallocation liability, redetermination liability, interest on any amounts, liquidated damages, claims for attorneys' fees or any costs or expenses whatsoever), including any derivative claims, asserted or assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in

WEIL:\96792719\1\77738.0004

whole or in part, the Debtors, the Estates, the Restructuring, the Chapter 11 Cases, the purchase,

sale or rescission of the purchase or sale of any Security of the Debtors or the Reorganized

Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest

that is treated in the Plan, the business or contractual arrangements between any Debtor and any

Released Party (other than assumed contracts or leases), the restructuring of Claims and Interests

before or during the Chapter 11 Cases, the negotiation, formulation, preparation or

consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any

related agreements, instruments or other documents, or the solicitation of votes with respect to

the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other

occurrence taking place on or before the Effective Date; provided that nothing herein or in the

Plan shall be construed to release any party or Entity from gross negligence, willful misconduct

or intentional fraud as determined by a Final Order; provided, further, that nothing in the Plan

shall limit the liability of professionals to their clients pursuant to applicable law. The Releasing

Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of

Action released under herein and Section 10.6(b) of the Plan against each of the Released

Parties.

60.     Nothing in the Plan shall limit the liability of professionals to their clients

pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

61.     Nothing in the Plan shall release, nullify, preclude, limit, modify, or enjoin

the enforcement of any police or regulatory liability to a Governmental Unit that any Entity

(including the Debtors and the Reorganized Debtors, as applicable) would be subject to as the

owner or operator of property after the Confirmation Date, including the federal Water Pollution

Control Act, 33 U.S.C. §§ 1251-1388, the Clean Streams Law, Act of June 22, 1937, P.L. 1987,

as amended, 35 P.S. §§ 691.1-691.1001, the Solid Waste Management Act, Act of July 7, 1980, P.L.380, as amended¸35 P.S. §§ 6018.101-6018.1004, the Storage Tank and Spill Prevention Act, Act of July 6, 1989, P.L. 169, as amended, 35 P.S. §§ 6021-101-6021.2104, 25 Pa. Code §§ 245.1-245.708, and other applicable state or federal law and the regulations promulgated thereunder, including any police or regulatory liability arising before or after the Confirmation Date from the Debtors' location at 1508 West 26th Street, Erie, PA.

62.    Nothing in the Plan shall in any way limit, reduce, or otherwise bar, except to the extent limited by the Bankruptcy Code, an otherwise valid and enforceable right of setoff, subrogation or recoupment, including with respect to executory contracts and unexpired leases.

63.    The releases set forth herein and in Section 10.6 of the Plan shall not apply to any Causes of Action against any of the members of the Prior Sponsor Group.

64.    <u>Exculpation</u>.  Notwithstanding anything in the Plan to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation, formulation, preparation, dissemination, implementation, administration, confirmation, consummation, and pursuit of approval of the New Teamsters Collective Bargaining Agreements and the Amended UCFW Local Collective Bargaining Agreements, including withdrawal from the UFCW Local One Pension Fund, the negotiation, formulation, preparation, dissemination, implementation, administration, confirmation, consummation, and pursuit of the Disclosure Statement, the restructuring transactions, the Plan, or the solicitation of votes for, or confirmation of, the Plan, the funding or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments, or other documents, the

59

solicitation of votes on the Plan; the offer, issuance, and distribution of any Securities issued or to be issued pursuant to the Plan, whether or not such distribution occurs following the Effective Date, the occurrence of the Effective Date, negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed under the Plan, except for actions determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.

65.    For the avoidance of doubt, Koninklijke Ahold Delhaize N.V. and its affiliates are not a Released Party or an Exculpated Party under the Plan.

66.    <u>Subordinated Claims</u>. The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

67.    <u>Retention of Causes of Action/Reservation of Rights</u>. Pursuant to Section 10.9 of the Plan, except as otherwise provided in Sections 5.3, 5.21, 10.5, 10.6, 10.7, and 10.10 of the Plan, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date

WEIL:\96792719\1\77738.0004

on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including any affirmative Causes of Action against parties with a relationship with the Debtors. The Reorganized Debtors (including the Acquisition Companies) or the GUC Litigation Trustee in connection with the pursuit of GUC Litigation Trust Causes of Action or objection to General Unsecured Claims, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses notwithstanding the occurrence of the Effective Date, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

68.    _Avoidance Actions_.  From and after the Effective Date, the Reorganized Debtors shall be deemed to have waived the right to prosecute any Avoidance Actions, other than (a) as a defense to any Claims asserted against the Debtors, their Estates, or the Reorganized Debtors, pursuant to section 502(d) of the Bankruptcy Code or (b) any GUC Litigation Trust Causes of Action.

69.    _Special Provisions for Governmental Units_.

(a)    As to any Governmental Unit, nothing in the Plan or Confirmation Order shall limit or expand the scope of discharge, release or injunction to which the Debtors or Reorganized Debtors are entitled to under the Bankruptcy Code, if any.  The discharge, release, and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, subsequent to the Confirmation Order, pursuing any police or regulatory action.

WEIL:\96792719\1\77738.0004

(b)        Accordingly, notwithstanding anything contained in the Plan or

Confirmation Order to the contrary, nothing in the Plan or Confirmation Order shall discharge,

release, impair or otherwise preclude: (1) any liability to any Governmental Unit that is not a

"claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of any

Governmental Unit arising on or after the Effective Date; (3) any valid right of setoff or

recoupment of any Governmental Unit against any of the Debtors; or (4) any liability of the

Debtors or Reorganized Debtors under police or regulatory statutes or regulations to any

Governmental Unit as the owner, lessor, lessee or operator of property that such entity owns,

operates or leases after the Effective Date.  Nor shall anything in this Confirmation Order or the

Plan:  (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the

Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court,

commission, or tribunal of jurisdiction to determine whether any liabilities asserted by any

Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or

the Bankruptcy Code.

(c)        Moreover, nothing in the Confirmation Order or the Plan shall release or

exculpate any non-debtor, including any non-Debtor Released Party, from any liability to any

Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue

Code, the environmental laws, or the criminal laws against the non-Debtor Released Parties, nor

shall anything in this Confirmation Order or the Plan enjoin any Governmental Unit from

bringing any claim, suit, action or other proceeding against the non-Debtor Released Parties for

any liability whatsoever; *provided that* the foregoing sentence shall not (x) limit the scope of

discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code, or (y)

diminish the scope of any exculpation to which any party is entitled under section 1125(e) of the Bankruptcy Code.

(d)     Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors and the Reorganized Debtors, nor shall the Plan or this Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan or this Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

70.     <u>Securities and Exchange Commission</u>.  Notwithstanding any language to the contrary contained in the Disclosure Statement, the Plan, or this Confirmation Order, no provision of the Disclosure Statement, Plan or Confirmation Order shall (a) preclude the Securities and Exchange Commission (the "**SEC**") from enforcing its police or regulatory powers, or (b) release any non-debtor from liability in connection with any legal or equitable action or claim brought by the SEC.

71.     <u>Corporate and Limited Liability Company Action</u>.  Upon the Effective Date, all actions of the Debtors or the Reorganized Debtors, as applicable, contemplated by the Plan shall be deemed authorized and approved in all respects, including (a) those set forth in Section 5.15 of the Plan, (b) the selection of the managers, directors, and officers for the Reorganized Debtors (other than the Acquisition Companies), (c) the distribution, transfer, or issuance of the New Equity Interests, (d) the entry into the Shareholders Agreement, (e) the entry into the Exit ABL Documents; (f) the entry into the Exit Term Loan and the Exit Term Loan Documents, (g) the entry into the New Second Lien Notes Indenture, (h) as related to the

Debtors, the entry into the LLC Transfer Transaction Documents (if applicable) and (i) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case, in accordance with and subject to the terms hereof. All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors (other than the Acquisition Companies, as to which, all action necessary to effectuate the APA and the LLC Transfer shall have been taken). On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments, certificates of merger, certificates of conversion, certificates of incorporation, or comparable documents, or franchise tax reports contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including, (i) the Amended Organizational Documents, (ii) the Shareholders Agreement, (iii) the Exit ABL Documents, (iv) the Exit Term Loan Documents, (v) the New Second Lien Notes Indenture, (vi) the LLC Transfer Transaction Documents (if applicable), and (vii) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by Section 10.12 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

72.    <u>Final Fee Applications</u>.

(a)    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to the Reorganized Debtors, counsel to the Ad Hoc Committee, and the U.S. Trustee, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Commencement Date through the Effective Date. Objections to any Fee Claims must be filed and served on counsel to the Reorganized Debtors, counsel to the Ad Hoc Committee, the U.S. Trustee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors or the Reorganized Debtors, as applicable, and the party requesting compensation of a Fee Claim).

(b)    Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Reorganized Debtors, as applicable.  Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court, including the Interim Compensation Order, may be paid at the times and in the amounts authorized pursuant to such orders.

(c)    On or about the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtors or the Reorganized Debtors, as applicable, and the Debtors or Reorganized Debtors, as applicable, shall separately escrow for such estimated amounts for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or

65

agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtors or Reorganized Debtors, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim. When all such Allowed Fee Claims have been paid in full, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Reorganized Debtors without any further action or order of the Bankruptcy Court.

(d)    The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

73.    DIP Professional Fees.  On the Effective Date, the DIP Professional Fees shall be paid in accordance with Section 2.4(c) of the Plan.

74.    Dissolution of Creditors' Committee.  Pursuant to Section 12.3 of the Plan, on the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases, *provided that* following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (a) Claims and/or applications, and any relief related thereto, for compensation by professional persons retained in the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of this Order or other appeals to which the Creditors' Committee is a party.

75.    Expedited Tax Determination.  The Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with

respect to tax returns of the Debtors filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the Effective Date.

76.    <u>Exemption from Certain Transfer Taxes</u>.  Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust, or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the revesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan (whether to one or more of the Reorganized Debtors or otherwise), (d) the grant of collateral under the Exit ABL Documents, the Exit Term Loan Documents, and the New Second Lien Notes Indenture, and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including this Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to this Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

77.     <u>Nonoccurrence of Effective Date</u>.  If the conditions listed in Section 9.2 of the Plan are not satisfied or waived in accordance with Section 9.3 of the Plan on or before the first Business Day that is more than sixty (60) days after the date on which this Confirmation Order is entered or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, the members of the Ad Hoc Committee, the Exit ABL Agent, the Exit Term Loan Agent, or any other Entity.

78.     <u>Teamsters/C&S Settlement</u>.  Nothing in this Confirmation Order or in the Plan shall in any way amend, modify, revise or affect the terms of the Teamsters Settlement Order.  The Parties' (as that term is defined in the Teamsters Settlement Order) rights and obligations under the Teamsters Settlement Order and related Settlement Agreement shall not be affected by the terms of this Confirmation Order and the Plan and such rights and obligations shall remain in full force and effect.

79.     <u>Notice of Entry of Confirmation Order and of Effective Date</u>.  The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date (the "**Confirmation Notice**") upon (a) all parties listed in the creditor matrix maintained by Epiq Bankruptcy Solutions, LLC, and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than ten (10) Business Days after the Effective Date.  The Debtors shall cause the Confirmation Notice to be published in each of the

*New York Times* and the *Buffalo News* on one occasion within five (5) Business Days after the Effective Date.

80.    <u>Binding Effect</u>.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and the Plan Supplement shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

81.    <u>Immediate Effectiveness</u>.    Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, and 9014, the terms and provisions of this Confirmation Order shall be immediately effective and enforceable upon its entry.

82.    <u>Jurisdiction</u>.    The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Confirmation Order.

83.    <u>Severability</u>.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the Reorganized Debtors or, if applicable, the Acquisition Companies (as the case may be), the Requisite Ad Hoc Committee Members, and the DIP ABL Agent or Exit ABL Agent, solely to the extent that a particular term or provision affects the legal and/or economic rights of the DIP ABL Agent, the DIP ABL Lenders, the Exit ABL Agent or the Exit ABL Lenders, as applicable, under the Plan, the DIP ABL Documents, or the Exit ABL Documents, and (c) nonseverable and mutually dependent.

84.    <u>Reference</u>.    The failure specifically to include or reference any particular provision of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the efficacy of such provision or related agreement, it being the intent of the Court that

WEIL:\96792719\1\77738.0004

the Plan is confirmed in its entirety, the Plan and such related agreements are approved in their entirety, and the Plan Supplement is incorporated herein by reference.

85.    <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, to the extent authorized by law, retain jurisdiction over the matters arising in and under, and related to, the Chapter 11 Cases, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code, *provided that* upon the occurrence of the Effective Date and the closing of the Exit Facilities, the jurisdiction governing issues related solely to the facilities or the documents executed in connection therewith or any liens, rights or remedies related thereto shall be as set forth in the Exit ABL Documents or the Exit Term Loan Documents, as applicable.

86.    <u>Post-Confirmation Status Reports and Final Decree</u>.   In lieu of the provisions of Local Rule 3021-1 of the Southern District of New York Local Bankruptcy Rules, after the entry of this Order, the Reorganized Debtors or the GUC Litigation Trustee, as applicable, shall file post-confirmation quarterly status reports with the Bankruptcy Court, which status reports shall include disbursements made by the Disbursing Agent or the GUC Litigation Trustee, as applicable.  The Reorganized Debtors or the GUC Litigation Trustee, as applicable, shall file a motion seeking entry of a final decree closing the cases as required by Bankruptcy Rule 3022.

87.    <u>Conflicts Between Order and Plan</u>.  To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and provisions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly

stated by further order of the Court.

Dated:  White Plains, New York
        November 9, 2018

                                            /s/Robert D. Drain
                                            UNITED STATES BANKRUPTCY JUDGE

WEIL:\96792719\1\77738.0004